# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

August 24, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MARKITA MILLER,**
**Claimant Below, Petitioner**

**vs.)** **No. 16-0742** (BOR Appeal No. 2051116)
(Claim No. 2010119069)

**CHARLESTON JOBS CORPS CENTER,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Markita Miller, by Edwin H. Pancake, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Charleston Jobs Corps Center, by James W. Heslep, its attorney, filed a timely response.

The issue on appeal is whether pain management treatment should be authorized for Ms. Miller's compensable injury. This appeal originated from the August 9, 2013, claims administrator's decision denying pain management for the condition of reflex sympathetic dystrophy as it is not an allowed condition in the claim. In its February 2, 2016, Order, the Workers' Compensation Office of Judges affirmed the decision. The Board of Review's Final Order dated July 6, 2016, affirmed the Order of the Office of Judges. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Markita Miller, a Work-Based Learning Specialist, was injured in the course of her employment on January 4, 2010, when she slipped and fell, landing on her right shoulder. Ms. Miller felt immediate pain and presented to Charleston General Hospital. X-rays were taken and no fractures or dislocations were revealed. The claim was initially held compensable for a

1

shoulder sprain/strain. It was determined that an MRI would be necessary, and eventually Ms. Miller was diagnosed with a rotator cuff tear.

On March 17, 2010, Ms. Miller underwent an independent medical evaluation performed by Saghir Mir, M.D. Dr. Mir diagnosed Ms. Miller with a traumatic rotator cuff injury related to the January 4, 2010, injury; pre-existing enchondroma in the right shoulder, which was not symptomatic; and some functional or psychological overlay. It was determined that Ms. Miller had not yet reached maximum medical improvement and was temporarily and totally disabled. Dr. Mir recommended that Ms. Miller undergo an arthroscopic examination of the right shoulder with repair of the rotator cuff followed by three to four months of physical therapy. Ms. Miller subsequently had surgery to repair her rotator cuff tear on April 30, 2010.

On September 29, 2010, Ms. Miller began presenting at the Holzer Clinic for continued pain. Ms. Miller saw Bruce Haupt, M.D. He stated that Ms. Miller was status post right shoulder subacromial decompression, acromioplasty, rotator cuff repair, and labrum debridement. He saw no further need for surgical treatment. Upon examination, Dr. Haupt noted that Ms. Miller had significant symptom magnification. He recommended that Ms. Miller do a long progressive course of physical therapy to gently stretch out her capsules and restore strength in her shoulder. Dr. Haupt opined that she ought to remain working in a limited capacity at typing. Ms. Miller returned to the Holzer Clinic on January 17, 2011, and she saw Marietta Babayev, M.D. Dr. Babayev's assessment was complete tear of the right rotator cuff tendon, with retraction, status post-surgical repair and possible reflex sympathetic dystrophy in the right upper limb. Dr. Babayev requested a bone scan to evaluate for possible complex regional pain syndrome. An MRI of the right shoulder was also requested.

Ms. Miller underwent an independent medical evaluation performed by David Soulsby, M.D., on February 14, 2012. Dr. Soulsby's impression was a rotator cuff tear of the right shoulder which was definitely related to the allowed condition and status post-surgical repair. Dr. Soulsby stated that there was possible chronic cervical strain syndrome or neurologic entrapment syndrome of the right upper extremity. However, there was no evidence that these conditions should be considered part of the compensable claim. While Ms. Miller did seem to be suffering from chronic pain, Dr. Soulsby opined that he could not find objective evidence to indicate there was further pathology involving the rotator cuff. He did not believe any further treatment was warranted beyond the provision for pain management services provided by Dr. Babayev.

On July 12, 2012, an MRI taken of Ms. Miller's right shoulder revealed evidence of prior rotator cuff repair. No definite recurrent tear was demonstrated. A bone scan from the same day revealed arthritic changes. The scan was negative for reflex sympathetic dystrophy. Ms. Miller subsequently sought treatment from Jason Pope, M.D., for her continued complaints of right shoulder, arm, and hand pain. Dr. Pope assessed reflex sympathetic dystrophy of the upper limb and rotator cuff rupture.

Ms. Miller testified in a deposition regarding her compensable injury. She stated that she hit the top part of her shoulder blade on the ground when she fell. Ms. Miller testified that she had no prior injuries or problems with her right shoulder, arm, or hand. Ms. Miller also stated

that some of the assertions made by Dr. Soulsby in his report were incorrect. She stated that she gave her best effort during his evaluation. Ms. Miller also authored an undated statement in which she noted that she underwent surgery on April 30, 2010, to repair her torn rotator cuff. She underwent physical therapy from May of 2010 through November of 2010. Ms. Miller wrote that she still experienced pain every day. On August 9, 2013, the claims administrator denied Ms. Miller's request for pain management for the condition of reflex sympathetic dystrophy as it was not a compensable component of the claim.

Ms. Miller continued to suffer pain and sought treatment independently. Through Ms. Miller's private insurance, she eventually underwent surgery for her cervical spine. On January 30, 2014, Ms. Miller presented at Charleston Area Medical Center for complaints of severe pain. The report noted that she had a longstanding history of pain due to severe cervical neck degenerative changes and discitis. On February 17, 2017, Ms. Miller presented to Neurological Associates and reported that she was extremely pleased with her cervical spine surgery. She no longer had any neck or arm pain. On February 25, 2017, Ms. Miller saw Fatima Aziz, M.D., who noted that Ms. Miller reported her extreme neck and arm pain were gone after undergoing back surgery.

On February 2, 2016, the Office of Judges affirmed the claims administrator's decision denying pain management for the condition of reflex sympathetic dystrophy. The Office of Judges reviewed Charleston Jobs Corps Center's closing argument in which it stated that Ms. Miller's alleged diagnosis of reflex sympathetic dystrophy has never officially been recognized as a compensable component of the claim. Although Dr. Pope and Dr. Babayev diagnosed the condition in 2012, their diagnoses have been proven inaccurate by the resolution of Ms. Miller's symptoms following cervical surgery. Charleston Job Corps Center stated that no post-surgical evaluator has diagnosed Ms. Miller with reflex sympathetic dystrophy or even noted any symptoms associated with reflex sympathetic dystrophy. The Office of Judges noted that a bone scan report of the right shoulder dated July 12, 2012, was negative for reflex sympathetic dystrophy. The Office of Judges concluded that reflex sympathetic dystrophy is not a compensable component of the claim and denial of pain management treatment for reflex sympathetic dystrophy is appropriate. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on July 6, 2016.

We agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Reflex sympathetic dystrophy has never been added as a compensable component of the claim. Ms. Miller alleges that her pain was a result of this condition, yet her symptoms disappeared after undergoing surgery on her cervical spine, which was unrelated to her compensable injury. The medical evidence of record supports the conclusion that reflex sympathetic dystrophy is not a compensable condition and thus denial of any treatment for reflex sympathetic dystrophy is appropriate.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: August 24, 2017**


**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker